## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| ANGEL H.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 22 C 50321 |
| v. | ) | |
| | ) | Magistrate Judge Laura K. McNally |
| Martin O'Malley, | ) | |
| Acting Commissioner | ) | |
| of Social Security,[2] | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER</u>[3]

Before the Court is Plaintiff Angel H.'s memorandum in support of summary

judgment, asking the Court to remand the Administrative Law Judge's ("ALJ") decision

denying his applications for disability benefits (D.E. 13: Pl. Mem. in Support of Summ.

---

[1] The Court in this order is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court.

[2] The Court substitutes Martin O'Malley for his predecessor, Kilolo Kijakazi, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On November 4, 2022, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to the magistrate judge for all proceedings, including entry of final judgment. (D.E. 9.)

J., "Pl. Mem.") and Defendant's response in support of summary judgment (D.E. 18:
Def. Mot. for Summ. J., "Resp.").

## I.     Procedural History

Plaintiff applied for disability insurance benefits on October 7, 2020, alleging
disability beginning November 15, 2019. (R. 278.) His date last insured was December
31, 2022. (*Id.*) The ALJ held a hearing on January 12, 2022, and on February 15, 2022, the
ALJ issued a written decision denying Plaintiff's application, finding him not disabled
under the Social Security Act (the "Act").[4] This appeal followed. For the reasons
discussed herein, Plaintiff's motion is granted and the Commissioner's motion is
denied.

## II.     The ALJ Decision

The ALJ applied the Social Security Administration's ("SSA") five-step sequential
evaluation process to Plaintiff's claims. At Step One, the ALJ found that the Plaintiff had
not engaged in substantial gainful activity since his alleged onset date (R. 29.) At Step
Two, the ALJ determined that Plaintiff had the following severe impairments:
osteoarthritis of the right knee, arthritis/spondylolisthesis of the lumbar spine, sciatica,

---

[4] The Appeals Council subsequently denied review of the opinion (R. 1), making the ALJ's
decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir.
2023).

obesity, depressive disorder, and anxiety disorder. (*Id.*)[5] At Step Three, the ALJ found that none of Plaintiff's impairments met a Listing. (R. 30-31.) Because Plaintiff had medically determinable mental impairments, the ALJ undertook an analysis of the Paragraph B factors set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1), determining that Plaintiff had moderate limitations in all four functional areas. (R. 33-34.) Before Step Four, the ALJ determined that Plaintiff had a residual functional capacity to

> perform sedentary work as defined in 20 CFR 404.1567(a) except he can never climb ladders, ropes, or scaffolds; no more than occasionally climb ramps or stairs, stoop, crouch, kneel, or crawl; no more than frequently use his hands for fine/gross manipulation; must be provided a sit-stand option allowing him to stand for 1 to 2 minutes after sitting for 30 minutes; and ought to avoid concentrated exposure to work hazards such as unprotected heights and dangerous moving machinery. The claimant can understand, remember, carry out and sustain no more than routine tasks and not engage in complex tasks, performing the same tasks day in and day out with no contact with the public for work purses (sic) and no more than occasional contact with coworkers and supervisors for work purposes. Finally, he may not engage in work where a machine sets the pace of work and is limited to going to the same place/location to perform work tasks day in and day out.

(R. 34.)

---

[5] The ALJ also found that Plaintiff had the non-severe impairments of numbness and weakness in his hands, nail fungus, hyperlipidemia, hypertension, diabetes, GERD, fatty liver, and cholelithiasis (gallstones). (R. 29-30.)

At Step Four, the ALJ found Plaintiff was not able to perform any of his previous work as a delivery driver but found at Step Five that there were significant jobs in the national economy Plaintiff could perform. (R. 43.) Therefore the ALJ held that Plaintiff was not disabled. (R. 44.)

### III.    Legal Standard

Under the Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions, known as "steps," in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the

Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

The Court does not "merely rubber stamp the ALJ's decision on judicial review." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022). An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id.* at 1054.

The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id.* (citation omitted). The Seventh Circuit further has clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a

decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

## IV. Analysis

Plaintiff argues that the ALJ erred (1) by improperly analyzing the opinion evidence, and (2) by improperly discounting Plaintiff's subjective symptom allegations. (Pl. Mem. at 8.) Having considered the record and the parties' briefs, the Court finds that a remand is required. Specifically, the ALJ has not supported with substantial evidence her rejection of the medical opinions' residual functional capacity determinations that Plaintiff is limited to one-to-two step tasks.[6]

### A. The ALJ's Consideration of Plaintiff's Mental Functioning

The Court acknowledges that in determining Plaintiff's mental residual functional capacity, the ALJ considered much of the evidence in the record. The ALJ discussed Plaintiff's testimony about his depression, anxiety, insomnia, loss of interest in activities, feelings of worthlessness, and diminished inability to think or concentrate, and reviewed mental status examinations that confirmed Plaintiff's depressed mood,

---

[6] Because the Court is remanding on the issue of the ALJ's treatment of the opinion evidence, it does not reach Plaintiff's second assignment of error.

somewhat labile affect, anxious ruminations, and sporadic passive suicidal ideation. (R. 38.) The ALJ also noted, however, that some of those mental status examinations also revealed that Plaintiff was cooperative, oriented, friendly, had normal attention and focus, and exhibited fair insight and judgment. (*Id.*) The ALJ also considered Plaintiff's history of mental health treatment including his use of anti-depressant medication as well as counseling notes that reflected symptom fluctuation, (*Id.*)

As relevant to the Court's decision here, the ALJ also evaluated the record's medical opinions about Plaintiff's mental limitations. Frank Froman, Ed.D., examined Plaintiff in March 2021 on behalf of the state as part of Plaintiff's claim for benefits. (R. 793-95.) After determining the Plaintiff was credible, Dr. Froman opined that "[i]t is Angel's physical issues that have resulted in his psychological problems, and which in all probability prevent him from being able to perform one and two step assemblies at a sustained competitive rate. He is still able to relate adequately to others, understand oral and written instructions, and manage benefits. It is quite unlikely that he would be able to withstand the stress associated with any form of competitive employment." (R. 795.) Dr. Froman diagnosed Plaintiff with major depressive disorder – moderate in severity, panic disorder with encroaching agoraphobia, and low normal mental intellectual functioning. (*Id.*)

The ALJ also reviewed the opinions of the two non-examining state agency doctors. In April 2021, Howard Tin, Psy.D., opined that Plaintiff was mildly limited in

7

his abilities to understand, remember, or apply information and his ability to adapt and manage himself, and moderately limited in his ability to concentrate, persist, or maintain pace and in his ability to interact with others. (R. 110.). At the reconsideration level, Michele Womontree, Psy.D., affirmed Dr. Tin's opinion except that she found Plaintiff moderately, and not mildly, limited in his ability to understand, remember, and apply information. (R. 153, 157.) Specifically, the two state agency doctors opined that Plaintiff could

> remember locations or work-like procedures; can understand and remember short simple instructions but has difficulty remembering detailed instructions; can carry out short and simple instructions; has difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods of time but is capable of performing simple tasks; has difficulty in interacting appropriately with the general public so limit work tasks that do not require interaction with the general public; has the ability to respond appropriately to changes in work settings; and is capable of performing one and two step tasks.

(R. 142, 157.)

The ALJ found the opinions of Drs. Tin and Womontree to be "generally persuasive" except for the limitation to one-to-two step tasks. (R. 40.) The ALJ's first reason for rejecting the one-to-two step task limitation was because the opinion "did not define what a 'step' is." (*Id.*) Second, the ALJ stated that the limitation was inconstant with the evidence as a whole because Plaintiff was able to drive, "which clearly involves more than 2 steps including getting the keys/remote, unlocking the vehicle door, opening the door, getting into the vehicle, closing the vehicle door, putting on your

seatbelt, adjusting your mirrors, putting the key int the ignition, pressing the brake, shifting gears, etc." (*Id.*) In contrast, the ALJ found Dr. Froman's opinion unpersuasive in its entirety because it did not contain the SSA's function-by-function analysis for residual functional capacity and did not refer to specific treatment notes to support an inability to perform one-to-two step tasks, "especially as the claimant is able to drive." (R. 42.)

**B.    The ALJ's Mental Residual Functional Capacity is Not Supported by Substantial Evidence.**

The ALJ erred in her analysis of medical experts' conclusions regarding Plaintiff's one-to-two step limitation. In the Social Security context, the phrase "one-to-two step tasks" is a term of art. *Leon A. v. Kijakazi*, No. 20-CV-939, 2022 WL 3226822, at *5 (N.D. Ill. Aug. 10, 2022). The Department of Labor uses the phrase to distinguish GED/Reasoning Development Levels, which categorize jobs based on the complexity of the tasks involved. *Shlattman v. Colvin*, No. 12 C 10422, 2014 WL 185009, at *7 (N.D. Ill. Jan. 14, 2014). According to the Dictionary of Occupational Titles, a limitation to one-to-two step tasks corresponds with Reasoning Development Level 1, which is defined as the ability to "apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT, Appendix C § III, 1991 WL 688702 (4th ed. 1991).

Here, Drs. Tin and Womontree concluded that Plaintiff was limited to one-to-two step tasks. (Cites). The ALJ rejected those opinions, finding them not persuasive. (CITE) Having reached that conclusion, the ALJ was required to support with substantial evidence why the opinion was not adopted. *See* Social Security Ruling 96-8p, 1996 WL 374184, at *7 ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

Specifically, the ALJ was required to "evaluate the persuasiveness of each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022). *See also* 20 C.F.R. § 416.920c(c)(1)-(5). An ALJ must explain how she considered the first two factors (supportability and consistency) but is not required to explain her consideration of the other factors. 20 C.F.R. § 416.920c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion." *Michelle D.*, 2022 WL 972280, at *4; 20 C.F.R. § 416.920c(c)(1). "Consistency assesses how a medical opinion squares with other evidence in the record." *Id*. *See also* 20 C.F.R. § 416.920c(c)(2). Although the ALJ here provided *an explanation* for rejecting the one- to two-step task limitation, the ALJ's explanation is not supported by

substantial evidence. *See Jarnutowski*, 48 F.4th 769, 774 (7th Cir. 2022) ("[A]n ALJ's RFC analysis must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations.") (internal quotation marks and citation omitted).

In this case, beyond her complaint that the state agency doctors did not define what a "step" is, the ALJ's sole other reason for rejecting the one-to-two step limitation was that found the limitation inconsistent with Plaintiff's ability to drive. Notably, she did not mention supportability at all. (r. 40.) These reasons are insufficient. Given the common and accepted use of the term of art "step" in the Dictionary of Occupational Titles, the ALJ's summary rejection of the one-to-two limitation for failing to be defined is not supported by substantial evidence.

In addition, while the ALJ does not specifically mention Plaintiff's reasoning level in her opinion, the residual functional capacity limits him to work that is "routine," and the same "day in and day out." (R. 34.) That closely tracks Reasoning Development Level 1, which, in addition to limiting a claimant to one-or-two step instructions, specifies that those jobs consist of "standardized situations with occasional or no variables in or from these situations encountered on the job." While the Court is unable to conclude if the ALJ intended to limit Plaintiff's residual functional capacity to Reasoning Development Level 1 jobs, it is also not apparent why the ALJ eliminated the one-to-two step task limitation from the residual functional capacity while retaining

other aspects of the reasoning level. That is, the Court is unable to trace the ALJ's reasoning from the evidence to her conclusion.

The ALJ's only other reason for rejecting the one-to-two step task limitation is that it was inconsistent with Plaintiff's ability to drive. Again, the ALJ does not discuss the supportability of the opinions, instead focusing only on consistency. The ALJ justifies her conclusion about this inconsistency by pointing to three pages in the medical record. Two of the pages are from standardized SSA function report forms completed by Plaintiff and his wife during his application for benefits. In these reports, Plaintiff and his wife checked boxes confirming Plaintiff's ability to drive. (318, 336.) In Plaintiff's function report, however, he added that his wife usually drives him. (*Id.*) The third document referenced by the ALJ is a phone message from Plaintiff to his therapist in which someone noted that Plaintiff called to ask to reschedule a session "due to conflict w diving family to/from work." (R. 637.)

As explained above, the ALJ is generally permitted to discount a medical opinion if it is not supported by or is inconsistent with other evidence in the record. But here, the ALJ did not build the necessary logical bridge between the evidence and her decision to discount the task limitation. The Court cannot trace the ALJ's logic as to how an acknowledgement that Plaintiff could drive, and apparently did drive on one occasion, translates into Plaintiff's ability to concentrate and persist on a sustained basis, including, for example, during an eight-hour workday. *See Rodney J. M. v.*

12

*O'Malley*, No. 3:23-CV-50236, 2024 WL 3888867, at *4 (N.D. Ill. Aug. 21, 2024) (remanding because it was unclear how Plaintiff's ability to drive five times per month or twenty minutes three to five times per week supported rejection of one-to-two step task limitation)[7].

In making its finding, the Court recognizes that there is disagreement in this circuit about whether a claimant's ability to drive is a proper basis for rejecting a limitation to one-to-two step tasks on the ground that driving requires more than two steps. *See, e.g.*, *Lissette B. v. Kijakazi*, No. 20-cv-7685, 2023 WL 2572431, at *2-3 (N.D. Ill. Mar. 20, 2023) ("Although [ALJ] suggested that [claimant's] daily activities, such as driving, using electronic devices to shop and communicate, and caring for family, conflicted with the ability to perform only one-to-two step tasks, she did not explain why that was so."); *Fatime I. v. Kijakazi*, No. 20-cv-3603, 2022 WL 4605081, at *4 (N.D. Ill. Sept. 30, 2022) (explaining that ALJ insufficiently supported rejection of one-to-two-step task limitation by merely referencing claimant's ability to drive and brush teeth); *Michael S. v. Saul*, No. 19-cv-4033, 2020 WL 4052903, at *5 (N.D. Ill. July 20, 2020) (explaining that, to reject limitation to one-to-two-step tasks, "[i]It is not enough to

---

[7] In *Rodney* the court remanded after the ALJ offered the nearly word-for-word same reasons as the ALJ used here for rejecting a one-to-two step limitation: the doctor did not define what constitutes a "step," and claimant was able to drive, which ALJ noted "involves grabbing the keys, unlocking the car door, opening the car door, sitting down, putting the key in the ignition/or pressing on the brakes and start button to start the car, adjusting the seat/mirrors, putting on a seat belt, placing hands on the steering wheel, shifting gears, pressing the gas pedal, and operating the vehicle.") 2024 WL 3888867, at *3.

simply state that the tasks above [including driving] require more than one-to-two steps"); *but see Christopher R. v. Kijakazi*, No. 21-cv-500, 2023 WL 5017942, at *5 (N.D. Ill. Aug. 7, 2023) (holding that "[t]he ALJ adequately explained why she rejected the state agency consultant's finding" where claimant "testified and submitted records indicating that he can drive for more than 30 minutes, and the ALJ explained that driving is an activity consisting of far more than two steps as it entails 'follow[ing] the safety rules of the road, follow[ing] traffic signals and stop signs, maintain[ing] control of the car, navigat[ing] intersections safely, and us[ing] appropriate speed' ").

In this case, however, the ALJ's apparent determination that an ability to drive necessarily defeats a one-to-two step task limitation does not constitute the required substantial evidence for rejecting the medical opinions. That determination, combined with the other errors described above, compels a remand.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion for summary judgment seeking to reverse and remand the ALJ's decision (D.E. 13) and denies Defendant's motion for summary judgment. (D.E. 18).

**SO ORDERED.**

ENTER:

_Laura K. McNally_
_____

**LAURA K. MCNALLY**

United States Magistrate Judge

**DATED:** **December 27, 2024**